Thank you. The next case today is A.C. et al. v. Daniel J. McKee et al. Appeal number 20-2082. Attorney Rebell, please reintroduce yourself for the record and proceed with your argument. Thank you. May it please the court, I'm Michael Rebell. I'm appearing on behalf of the plaintiffs in this case and, Your Honor, I would respectfully request two minutes for rebuttal. Yes. Thank you. Your Honors, this case is about the perpetuation of the constitutional values upon which the continued viability of our democratic system of government depends. And this is not hyperbole to make this statement. That is precisely what the district court stated in this case. And I quote, American democracy is in peril. And the judge eloquently went on for 55 pages to expound upon what this peril was and the relationship of educating our students, educating them in the civic values and the civic knowledge they need to maintain a democratic government after they graduate. He emphasized those values also, noting, I'll just quote, the first defense against the degeneration of democracy is a compulsory civic education. Now, getting to the core legal issues that are before us, the district court also made clear that the United States Supreme Court in the Rodriguez case had left an opening for future consideration on this precise question. That is, what is the quantum of education that students need to be in a position to effectively and meaningfully exercise their constitutional rights in areas like the right to vote, areas like freedom of speech, full participation in the phrase, something that amounts to an absolute denial of educational opportunities. Why isn't this case where you're focused on civic skills and education and so forth? Why isn't that just part and parcel of what an education might look like as opposed to the absolute denial of an education? That related to the immediate issues before the Supreme Court in that case, which was fiscal inequity. I think what they were saying is the case came before them where a school district or school students were getting no financial support whatsoever for their education. That would be a violation, but that was separate from the clear statement they made that to effectively exercise your constitutional right, there had to be some quantum of education. I would submit that the fact that the Supreme Court about a decade later in the Papasan case specifically emphasized that they had left this question open means that they were focusing on these constitutional values. There have been four federal judges so far. Judge Smith below, actually five judges. There were four judges in that Gary B case coming out of the Sixth Circuit, all of whom looked at this language and said the Supreme Court left open this issue of what quantum of education is actually necessary for students to meaningfully exercise constitutional rights. You referenced Papasan, but didn't that case specifically refer only to reading and yes. In that case, the panel of the Sixth Circuit, the decision was later vacated, but the district court below did rely on it. They specifically held there is a right under the... I'm talking about Papasan. Papasan, as I recollect, had to do with the amounts of funding that certain districts were in. Papasan, the Supreme Court twice in that case did say that this question of what quantum of education is needed to exercise constitutional rights was still open. I would point out that Justice Powell, who wrote the Rodriguez decision, concurred in that case and did not object to that statement that the issue was still open. Yes. My question was what issue? I thought prior cases don't foreclose the possibility of some identifiable quantum of education constitutionally protected, but that possibility would arise only in the case of radical denial of educational opportunities, such as not teaching children to read or write. That was my question. It's kind of a simple question. Well, that's an example of not teaching children to read or write. The Gary B case, the Sixth Circuit panel, did focus in on that. I think the difference with this case is that we have facts here that fully explain what's involved in a civics education, what's involved in meaningful ability to exercise your rights. We're talking about a motion to dismiss. We weren't given the opportunity to present this evidence. The Supreme Court made clear in Rodriguez the reason they didn't meet that issue at that time is there was no evidence. My memory is Gary B was also a motion to dismiss. To pick up on Chief Judge Howard's question, isn't the distinction between Papasan and Gary B? Even as alleged in Gary B, it was that children were getting no education, that there was this artifice of sitting in classrooms and not being educated. Here, we're focused on essentially what should be part of the curriculum, what should be constitutionally required for the curriculum. How is that not different? Well, Your Honor, it is different. Gary B went a certain distance because the facts in that case were that children in those Detroit schools that were issued there were essentially graduating functionally illiterate. We don't deny that minimal reading and writing skills are a prerequisite for exercising constitutional rights, but we submit that something more is necessary. We don't see how one can exercise the right to vote if you're not in a position to understand the competing policy positions that candidates are putting forward, indeed, if you don't even understand what the voting process means. We submit you can't understand how to exercise your First Amendment rights or full participation in government if you don't know anything about when parents get together with the school board and the superintendents and the teachers, and they decide that learning statistics is more important today than learning what you call media literacy skills that you say the Constitution requires. If I understand your proposal, and if they say, so we've got limited time with the students, we're going to concentrate on some higher math functions, you would say that this panel of this court should say we disagree. We think you better teach the kids media literacy skills. That seems to involve us, sort of turn us into a super school board. Well, Your Honor, that is not what we're asking. We're asking this court to rule that some amount, some quantum of civic education is required for Let's be precise. We got recent, the state issued a recent law, and you say it doesn't moot the case because it, quote, plaintiffs are not being properly taught the media literacy skills they need to distinguish accurate. So you seem to be saying there that the Constitution requires every school district in the country to offer a course in media literacy skills or to curriculum of some course. Your Honor, we are saying that media literacy is an absolute requirement to exercise constitutional rights in the 21st century. If you cannot distinguish erroneous from accurate information, you're not in a position to vote intelligently, but we're not asking this court to make that decision. This is a motion to dismiss, and we've alleged those facts in our complaint. We've alleged dozens of other facts where we think Rhode Island's civic education is deficient, but exactly what the scope of the quantum of education is would be a matter for the district court to determine after trial, after there's an evidentiary record. So you do want the premise is that the district court, rather than the educators, the parents, the school boards, the teachers, would determine whether, for example, you would have to teach democratic deliberation skills rather than a course in critical thinking. Well, Your Honor, we have maintained in our briefs, and there are 10 very powerful amicus briefs here, all of which seem to have a consensus about what the nature of civic education needs to be in the 21st century. You need a certain amount of civic knowledge, civic skills, civic values, etc., but exactly what quantity of these values, which of them are most important, I submit as a factual question for the district court to determine on remand. What we're asking this court to do is say that the issue the Supreme Court left open in Rodriguez, i.e., what is the quantum of education, has to involve some amount of civic education. The lower court went off on the Gary B. premise that it's only functional literacy, and quite frankly, the court also said that in addition to no education at all, this minimum standard the court put forward was a totally inadequate education. You know, as Martha Minow, the former dean of the Harvard Law School, said in her amicus brief in this case, that no civic education whatsoever is a totally inadequate education, and that's the core legal issue in this case. Are kids entitled to some meaningful civic education that's going to prepare them to fully exercise their constitutional rights? That's what the Supreme Court said in Rodriguez they're entitled to. Now, what that quantum of education is, Supreme Court left open, and what we're asking this court to do is say, yes, that quantum has to have some substantive civic knowledge, some substantive civic skills. I think it means media literacy. I think it means a number of other things, but those are the points we have to present evidence on before the district court, and we're prepared to do that. Now, if I may continue, I'd also like to... Yes, you have one minute left. Well, Your Honor, what I wanted to say is the substantive due process issue was not before the Supreme Court in Rodriguez. There's been a lot of development of substantive due process since that time, and we think that the lower court did confirm that civic education has been a national value that's deeply rooted in the traditions and history of this country, but the court then went on to say that this important civic education is a matter for state constitutions, but the court did not refer to the important Supreme Court cases we emphasized in our brief, the Tims case, the McDonald case, where the Supreme Court has made clear where there is a trend, a strong trend in state constitutions and state laws about the importance of a particular value. That is something that becomes a national value, and we had 36 out of the 37 state constitutions at the time of the passage of the 14th Amendment did emphasize the importance of education. Today, all 50 state constitutions emphasize it, so I would submit, yes, it's written into state constitutions, but the fact that just about every state constitution emphasizes education means it's a substantive due process value under the United States Constitution. If you would mute your device, we'll hear from Mr. Catone first. Good morning, Your Honors. Anthony F. Catone for Appellate Defendants, Board of Education, the Council on Elementary and Secondary Education, and the Education Commissioner. I will address the merits of plaintiff's claims under the Equal Protection Clause and argue that the claims are not only precluded as a matter of settled constitutional law, but are in reality familiar educational adequacy claims cognizant of their state law, for which the plaintiffs could have pursued clear state law remedies, and to which state law procedures relating to administrative judicial review are applicable. The Rhode Island Attorney General's Office will address the plaintiff's remaining arguments. As reiterated by the District Court, and as this panel well knows, to state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons, and that such disparate treatment either burdened the targeted suspect class or has no rational basis. And here the District Court was correct when it held that plaintiffs failed as a matter of law to state a claim under the Equal Protection Clause for two basic reasons. First, plaintiffs have explicitly admitted that they do not constitute a suspect class, and they do not claim that members of any identified group are treated any differently than the members of their class. Second, binding legal precedent has established that there is no fundamental right to education under the United States Constitution, precedent which was articulated in Rodriguez, affirmed in the trio of Supreme Court cases upon which the plaintiffs rely, that is Plyler, Papasan, and Kattermas, and precedent which has been followed by this circuit in Toledo v. Sanchez. Plaintiff's central thesis is that the Constitution guarantees some minimally adequate level of education because it is essential to the exercise of other rights guaranteed by the Constitution, and they rely upon selected dicta in Rodriguez. Counselor, is this case that broad, are plaintiffs, are they not arguing, are they not claiming that there's a right to an education that prioritizes civics education? They're claiming the right to civics education. They're creating a new constitution. There's no right, there's no fundamental right to education. That's correct, and if there's no constitutional right to education, they're clearly, as the district court pointed out, no constitutional right to the civic education that's being kind of vaguely articulated by the plaintiffs. I mean, I think that the issue that was the dicta that they rely upon was really whether an absolute denial of educational opportunities could ever amount to a violation of a fundamental right, and while the court in Rodriguez quoted Brown versus Board of Education and conceded that education may be the very foundation of good citizenship, it also made crystal clear, and I quote, that the importance of a service performed by the state does not determine whether it must be regarded as fundamental for purposes of examination into the Equal Protection Clause, and the court held that education was neither explicitly nor implicitly guaranteed by the Constitution. Furthermore, the court noted in Rodriguez that courts are not well positioned to address public education policy issues, which, to quote the court, often involve a myriad of, quote, intractable economic, social, and even philosophical problems. Plaintiffs rely heavily upon Plyler. Plyler, however, does not stand for the proposition that any law arguably impairing a child's ability to receive someone's idea of an adequate education is subject to heightened scrutiny. The Plyler Court, which, unlike the court here, was confronted with an absolute denial of education to children, who in the court's words consisted of a shadow population of illegal immigrants, only found that heightened scrutiny was justified in that unusual circumstance, which the Supreme Court and the Second Circuit have both recognized, that it was the unique confluence of theories and rationales in Plyler, not present here, that called for the heightened scrutiny. Similar in Papasan, another case cited frequently by the plaintiffs, the court noted that had not measurably changed the approach articulated in Rodriguez, made clear that education was not a fundamental right, and concluded that undocumented aliens were not a suspect class. And in Catermas, Justice O'Connor emphasized that the court continued to reject suggestions that statutes having different effects on the wealthy and the poor should, on that account alone, be subjected to strict equal protection scrutiny, or that education was a fundamental right. Plaintiffs rely, and the district court below discussed rather heavily, Gary B. Whitmore, decision is now a legal nullity, but the Sixth Circuit did hold, for the first time in that case, that plaintiffs had a substantive due process right to quote, at least a rudimentary educational infrastructure, such that it is plausible to obtain literacy within that system, unquote. The district court here, after discussing Gary B. at some length, and concluding that the majority and dissenting opinions were equally compelling, highlighted the self-evident distinction between a right to basic literacy, which the Gary B. Court clarified was narrow in scope, and did not quote, guarantee an education at the quality that most have come to expect in today's America, unquote, and the amorphous civics education forming the basis of plaintiff's claims here. Moreover, in Gary B., the circuit court upheld the district court's dismissal of the equal protection claim on grounds similar to those mandating dismissal here, noting that the of resources between their schools and others. In Rodriguez, the court also expressed concern over excessive federal intrusion into public education in terms that implicate separation of powers, as well as the Tenth Amendment. Indeed, the Supreme Court has consistently maintained that, as noted in Wisconsin v. Yoder, public education is, quote, perhaps the most important function of state and local governments, ranking at the very apex of a state's sovereign responsibilities. On the state level, Rhode Island's Supreme Court has twice held that public policy choices, and in doing so it was construing the state's education clause in its constitution. It held that public policy choices concerning what is taught in the public schools are within the plenary authority of the General Assembly, and the General Assembly has delegated most of that responsibility regarding public schools to the cities and towns, the school committees. In addition to its legal defects, plaintiff's factual arguments are inconsistent. On the one hand, they mistakenly claim that defendants provide no civics education whatsoever, yet at the same time they effectively concede, as they must, that some civics education is provided. In fact, contrary to plaintiff's claim, three of the 20 courses that Rhode Island students must complete in order to graduate from high school must be social studies courses that include a civics component. Mr. Catone, I think I'm going to stop you there unless there are additional questions from the panel. All right, if you would mute your device, and I'd ask all counsel to check and make sure that your videos are muted, except for Mr. Field, who we will hear from. Good morning, your honors. It may have pleased the court. Michael Field, I'm representing the governor of Rhode Island, the Speaker of the House, and the Senate President. Judge Howard, I think you're right when you say that the issue before the court is exceedingly narrow. The constitutional right that the plaintiffs asked this court to recognize, which no other court has recognized in the history of this country, is that a civics education must be part of the educational component and be prioritized at least as high as the subject matters that Congress has required through No Child Left Behind and Every Student Succeeds Acts. There's simply no authority out there, and as the members of this court have already recognized in the colloquy with plaintiff's counsel, when the Supreme Court has talked about the quantum of education, if it exists, the court has always talked about it in the holistic, broad context of an education as a whole, without subject matter distinctions. The court has also noted that when they talk about the possibility of a quantum of education being required, it's always talked about it as a foundational basis, or a basic, or a rudimentary subject matter. And even Gary B., to Judge Casper's point, even Gary B. talks about, I think it's on page 660, that the question before that court was whether the education the state offers, when taken as a whole, plausibly provides an ability to learn how to read. So even Gary B. was a case talking about education as a whole, and the facts of Gary B., obviously, again, as Judge Casper noted, denied, the allegations denied education as a whole. It was a building with four walls. There was a student, an eighth grade student, who was teaching math to seventh and eighth graders for the period of 30 days, and many other just deplorable facts that human beings shouldn't be in those types of walls. I think one of the allegations was that 110 degrees. So on that basis, the nature of the quantum of education, if one even exists, has been as a subject matter as a whole on education. Additionally, the history of the country, and I know Plaintiff's Counsel asked this court to look at the constitutional rights that other state courts have recognized, but those courts, none of those, to my knowledge, have recognized a civics right. Either the history of the country has talked about education as a whole, and to the extent that a constitutional right has been recognized on the state level, it's been through the state constitutions or state law, and those have always recognized education as a broader, a basic education as opposed to a certain subject matter of education. Um, one of the other points that I think, um, sort of, um, I think Judge Kayada may have brought this up a little bit, um, which also, um, undermines the substantive due process right that Plaintiff's asked this court to recognize is there's no careful description of the other end, um, throughout this case. I know in the brief, they talk about four specific areas, knowledge, skills, experience, and values. Um, the, um, in my brief, I went through some of the allegations, which they, or some of the components that the plaintiffs suggest make up those, um, including possibly even extracurricular activities and sports. Um, we talked about media skills, um, and, and the list goes on and on. Um, so for that reason also, I would submit that the substantive due process, um, also, um, fails on that ground. Um, and I think the last point I'd just like to make very quickly is, uh, I know Mr. Catone talked about the equal protection, um, but in this case, I just think it's important that, uh, the plaintiffs here don't allege that the entire basis of their case is that the state treats everybody equally, um, that the state deprives everybody equally of a civics case. There's no allegation in this case that the state treats one entity or one school district better or worse than another. And, and just like in Rodriguez, that doesn't mean that certain schools or certain school districts don't have additional resources, don't offer different programs. Um, but the state has not done that and neither have the educational defense have done that, uh, through either their regulations or through their, um, or through statute. Uh, so for those reasons, I'd ask that the court affirm the district court's decision. If the court has any questions, I'd, I would be happy to address them. Thank you, Mr. Field. If you would mute, Mr. Rebell, any rebuttal? Uh, yes, sir. I'd like to, uh, quickly respond to the, uh, holistic point that Mr. Catone, Mr. Fields made and the Plyler reference from Mr. Catone. Um, the holistic reference seems to imply that we're asking this court to overrule Rodriguez in its entirety. We're not. Uh, we're talking about an exception to that, uh, overall finding that in general education is not, um, a fundamental right for equal protection purposes. Um, but the court said that, uh, the future consideration should be whether there's an exception to that when we're talking about the quantum, the subset of quantum is a subset of education that's needed to prepare for constitutional values. Now, as far as Plyler, Mr. Catone, uh, introduced that point by referencing Brown versus board of education. And I would submit to your honors, there is a fundamental tension between Brown and Rodriguez. I don't want to hide that fact. Uh, in Brown, the court said that education is perhaps the most important function of state and local government today. It said that a child today cannot, uh, lead a good life without, uh, an educational opportunity. And then in Rodriguez, 19 years later, they say this important, this most important right somehow, um, is not recognized as fundamental by the constitution. Now I understand why there are all the reasons that the court didn't want to get into fiscal equity and the broad precedent, but I submit that's precisely why they wanted to maintain this possibility of this exception that they carved out. And Plyler that Mr. Catone referenced further emphasizes that point. And I would really stress that justice Powell who wrote this, uh, phrase about quantum of education, he joined in that, uh, uh, Plyler decision. And I want to quote just a couple of lines from Plyler. Public education is not a right granted to individuals by the constitution under Rodriguez, but the court said in Plyler, neither is it merely some governmental benefit indistinguishable from other forms of social welfare legislation. Both the importance of education and maintaining our basic institutions and the lasting impact of its deprivation on the life of the child marked a distinction. The American people have always regarded education and the acquisition of knowledge as matters of supreme importance. So I submit in conclusion that the way to reconcile Brown and Rodriguez and the issues in this case is to recognize what justice Powell and the other, all nine of them, and Rodriguez was saying there should be future consideration of what the quantum of education is to exercise important constitutional rights. That is the subset. That's the exception from the fundamental rights holding. And I would respectfully ask this court, uh, yes, this would be, um, a statement of, um, um, a new right, a declaration of rights. Uh, it would not involve, uh, micromanaging, uh, anything in Rhode Island. The state has this discretion really, uh, still, uh, under that rubric, uh, to determine the details. Um, but they need to make it a priority. And for Mr. Field to say that civic education in the 21st century, when American democracy is in any other subject, uh, that allows Rhode Island to continue to not make it more important than others, uh, they make it less important than other subjects. And that's what we're talking about in this case. So thank you very much for your consideration. Thank you counsel. That concludes argument in this case, attorney rebel, attorney Katone and attorney field. You should disconnect from the hearing at this time.